ANTHONY E. STEPHENSON v. THOMAS L. JONES AND WIFE, PAULA H. JONES, AND COLEMAN R. FELTON AND WIFE, MARY K. FELTON

No. 836SC744

(Filed 19 June 1984)

1. **Appeal and Error § 42— summary judgment—omission of matters from record on appeal—presumption**

     Where the trial court considered a docket sheet and court file in another case in granting summary judgment for defendants, but plaintiff appellant failed to place the docket sheet or the court file in the record on appeal, it will be presumed as a matter of law that nothing in the file aids the plaintiff or reveals any genuine issue for the jury's determination.

2. **Registration § 1— unrecorded deeds or contracts to convey—effect of Connor Act**

     The Connor Act, G.S. 47-18, does not favor persons withholding from the public record deeds or contracts to convey or reconvey lands, particularly when third parties have given valuable consideration for the lands.

Stephenson v. Jones

**3. Registration § 5.1— vendees of land—no notice of facts affecting legal title**

Vendees' purchase of land from an attorney and his wife was without notice of any facts which would affect legal title where no *lis pendens* was pled or proved, and where an affidavit of the purported owner failed to show that pending litigation, of which he gave the vendees oral notice, affected record title to the property.

**4. Registration § 5.1— vendees of property—no notice of unrecorded oral promise by vendors to reconvey—innocent purchasers for value**

Vendees who bought a farm from an attorney and his wife were the lawful owners thereof free and clear of any claims of plaintiff purported owner, who claimed a better right to the farm pursuant to an alleged unrecorded oral promise by the attorney and his wife to reconvey the farm to him once a lawsuit with his wife was settled, where the evidence showed that the vendees were innocent purchasers for value in that they paid a valuable consideration and they were on notice that the attorney and his wife held legal title to the farm, that the vendees could deal with the attorney and his wife independently of the purported owner, and that the purported owner desired that the farm be sold and believed that the sale would protect his interests, and where the purported owner's affidavit failed to allege facts which would constitute a parol trust from the attorney and his wife to reconvey the property directly to him.

APPEAL by plaintiff from *Barefoot, Judge.* Judgment entered 19 March 1983 in the Superior Court, HERTFORD County. Heard in the Court of Appeals 30 April 1984.

*Rosbon D. B. Whedbee for plaintiff appellant.*

*Baker, Jenkins & Jones by Ronald G. Baker and W. Hugh Jones, Jr., for additional defendant appellees.*

BRASWELL, Judge.

The defendants Coleman R. Felton and his wife, Mary K. Felton, bought the "Old Betty Stephenson Farm" by warranty deed on 3 January 1983 from the defendants Thomas L. Jones and his wife, Paula H. Jones. Were the Feltons bona fide purchasers for value? The plaintiff Stephenson claimed a better right to the same farm due to an alleged oral promise made by the defendants Jones to reconvey the property to him, and filed this lawsuit on 18 January 1983, asking for "equitable relief, in the nature of a recision of the referenced Deed." The Feltons filed their Answer and Counterclaim on 18 February 1983 denying the plaintiff's claim and raising the further defenses that the complaint failed to state a claim, according to Rule 12(b)(6), and that any such claim

was barred by the Statute of Frauds pursuant to G.S. 22-2 and the Connor Act, as found in G.S. 47-18 and G.S. 47-20.

Simultaneously with their answer, the Feltons moved for judgment on the pleadings. After a hearing on 14 March 1983 the court gave judgment to the Feltons and declared them to be the lawful owners of the farm free and clear of any and all claims of the plaintiff, and ordered Stephenson to vacate the premises. The plaintiff appeals.

It must be kept in mind that the defendants Jones are not parties to this appeal. The plaintiff's claim against the Joneses is yet to be heard or determined on the merits or through motions in the trial division. While technically this appeal might be considered interlocutory and dismissible because the rights of fewer than all parties and fewer than all claims have been resolved, we nevertheless consider this appeal as though it had been allowed under certiorari because a decision determining the plaintiff's claim against the Feltons is independently decisive of whether or not the plaintiff can ever have the house and land reconveyed in kind to him. If the Feltons are bona fide purchasers for value, they should not have to wait for relief until the separate claims and rights between Stephenson and the Joneses are settled. No just reason would here be served by allowing further procedural delay. G.S. 1A-1, Rule 54, Rules of Civil Procedure; G.S. 1-277.

The sole issue raised by the plaintiff Stephenson is whether the trial court erred by granting judgment on the pleadings to the Feltons. We must, however, treat the appeal as one involving the principles of summary judgment because the record reveals that at the hearing the parties offered evidence.

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. . . . G.S. 1A-1, Rule 12(c), Rules of Civil Procedure.

[1] The face of the judgment shows that the hearing was pursuant to Rule 12(c) and that the court considered "the pleadings in the case, the Affidavit of the Plaintiff, the Consent Judgment and Superior Court Docket Sheet in Hertford County Court File 80CVD367, and the arguments of Counsel." However, the plaintiff

appellant has not brought forward or placed in the agreed record on appeal the docket sheet or the court file in 80CVD367, and so we must presume as a matter of law that nothing within the file aids the plaintiff or reveals any genuine issue for a jury's determination in this case. *Town of Mount Olive v. Price*, 20 N.C. App. 302, 201 S.E. 2d 362 (1973). Our review for summary judgment purposes is necessarily limited to a determination of whether the pleadings plus the affidavit of the plaintiff raise a genuine issue of fact for trial. After a careful review of these documents we hold that there is no genuine issue of fact for trial and affirm summary judgment for the defendants Felton. Our analysis of the case follows.

By their motion the Feltons have taken on the burden of establishing that there is no genuine issue of fact remaining for the jury's determination and that as a matter of law they are entitled to judgment now. When the movant's motion is properly supported, then the duty falls to the nonmovant to come forward and set forth specific facts which will show that there is a genuine issue of fact. The nonmovant cannot rest on mere allegations in the pleadings or mere denials in an affidavit, but must bring forth facts which forecast that the claimant can at least make out a prima facie case. *See Lowe v. Bradford*, 305 N.C. 366, 289 S.E. 2d 363 (1982). Here, the Feltons contend that the claim of Stephenson is nonexistent, or that even if a claim exists, it has not been pled so as to meet the minimum requirements of a claim, and that the forecast of the evidence shows that no prima facie case was made against them even with the use of Stephenson's affidavit.

We look now to the pleadings. As to the Feltons, the only substantive allegations in the Complaint against them are in paragraphs 38, 39, 43, and 44. The substance of paragraph 38 alleges the actual conveyance from the Joneses to the Feltons by warranty deed bearing "revenue stamps in the sum of $80.00, indicating that the consideration paid by said Feltons was in the sum of $80,000.00." The substance of paragraph 39 indicates that the property "is presently encumbered by a Deed of Trust Mortgage in the sum of approximately $79,000.00, and that said property has a present market value of at least $175,000.00."

The words that purport to allege the claim for relief appear only in paragraph 43. We quote it verbatim.

43. That on December 29th and 31st, 1982, the additional defendant Coleman R. Felton, or the additional defendant Mary K. Felton, or their agents, did contact the plaintiff, with regard to inquiring about purchasing the referenced 3,100 sq. ft. brick dwelling house and premises from the plaintiff. On those occasions, plaintiff informed the said additional defendants Felton or their agents, that the property was presently legally titled to Thomas L. Jones, and wife, but that he (plaintiff) was in the process, through his attorney, of re-purchasing the land from the defendant Jones, and to please contact him on the following week, being the week of January 3, 1983. That the referenced Deed of Conveyance to the Feltons, from the defendants Jones, is of course dated January 3, 1983, but prior to and at the time of said conveyance the additional defendants Felton had actual notice from the plaintiff as to his claim and interest in the subject described real property.

Paragraph 44 is in the nature of a prayer for relief for Count Two of the Complaint which is the only count seeking relief against the Feltons. In this paragraph the plaintiff asks for damages against the Joneses, and for "equitable relief, in the nature of a recision" of the deed from the Joneses to the Feltons, or alternatively, for a court ordered conveyance from the Feltons to Stephenson.

Over the centuries it has become fixed in our law that in order to create an enforceable contract to convey or reconvey land it must at the least be in writing. The complaint is very specific that any agreement to reconvey was oral. Pled in the complaint is a conversation between the plaintiff and the defendant Jones, who was then the plaintiff's attorney. Immediately following the plaintiff's award of an absolute divorce on 11 August 1981, Attorney Jones allegedly said to his client Stephenson:

Tony, you need to get that farm and house out of your name, until we get this property settlement mess straightened out. Just to make sure she doesn't get anything, I want you to Deed the farm and house to me, and I will reconvey it to you for whatever I have in it, plus eighteen (18) percent interest, when this matter is finally settled. In my opinion, this is the

best thing you can do to protect your interest, and to make sure she doesn't get anything out of the property settlement case.

Relying upon this advice of counsel, the plaintiff alleges that he proceeded to convey by warranty deed the real property to Attorney Jones and his wife, the defendant, Paula H. Jones. This deed is silent as to any oral agreement to reconvey. However, upon delivery of this deed the plaintiff alleges further in paragraph 18 of the complaint that another oral agreement was made between Stephenson and Attorney Jones.

I'm going to give you a Promissory Note for $30,000.00 bearing interest at 8% annually, and a Deed of Trust to secure it on the property, just in case anything happens to me while this matter is pending. Now I don't want you to record the Deed of Trust, because if you do, your former wife may find out about it and be able to get half or all of the money that it represents.

Further allegations say that Stephenson took possession of the promissory note and deed of trust and that he has never recorded the deed of trust.

Another uncontested intervening fact between the alleged oral promise to reconvey and the recording of the deed to the Feltons was a foreclosure sale of the property by the Federal Land Bank of Columbia, South Carolina, for nonpayment of its prior note and deed of trust. The foreclosure occurred on 25 September 1981, and the defendants Jones purchased the property at the foreclosure sale. Again, Stephenson alleges that at or immediately prior to the foreclosure sale Jones reiterated his promise to reconvey the property upon the conclusion of the domestic relations lawsuit.

An examination of Stephenson's affidavit of 14 March 1983 reveals that on 29 December 1982 the defendants Felton visited Stephenson at the house on the property in question and made a general inspection, that Mr. Stephenson confirmed that he was interested in selling his house, and that he had previously had the property surveyed so he could sell the house separately from the farm lands. When asked by Mr. Felton why Stephenson wanted to sell the house, Stephenson answered:

I explained to him that I had been involved in a lawsuit with my ex-wife, for some period of time, and that ultimately, not only I, but my attorney Mr. Jones, and the Federal Land Bank Trustee and the Federal Land Bank had also gotten sued in that lawsuit, and that we had reached a settlement where I needed to sell the property in order to conclude the lawsuit and to protect my interest. I explained to them specifically, that at the present time, December 29, 1982, that the title to the property was in the hands of Mr. Thomas Jones, my former attorney in Murfreesboro, and that he was holding the deed until I could sell the property and get enough money so I could get the rest of them out of the ownership of the property. While we were having these discussions, I had my pile of papers concerning the lawsuit on the kitchen table, which included the maps of the property and matters pertaining to the lawsuit between my ex-wife and myself, as well as a note and deed of trust from Mr. Jones to me for the property. As I recall, Mr. Felton did not look at any of the papers personally, but we discussed generally what the problem was involving the real property aspect of the lawsuit, and as I have indicated above, the necessity for me to go ahead and sell this property in order to raise sufficient funds to make final settlement with the other persons concerned including Mr. Jones.

On 31 December, two days later, according to the affidavit, the Feltons again visited Stephenson at the house "but we didn't have any further discussions about the property being tied up in my lawsuit with my ex-wife." On 8 January 1983, Mr. Felton went to the law office of Mr. Jones, learned that Mr. Stephenson was preparing a lawsuit to include Felton, then went to see Mr. Stephenson to discover "what was going on."

In their Answer to the Complaint the Feltons deny that Stephenson is entitled to a reconveyance of the property. The Feltons admit that they are the registered titleholders and owners by recorded deed of 3 January 1983, that the deed bears revenue stamps of $80.00, and that a current deed of trust of $79,000.00 is on the property. Specifically, all of the facts alleged in paragraph 43 of the complaint are denied. Thus, for summary judgment purposes the only evidence in support of Stephenson's

"denied" claim against the Feltons is his own affidavit of 14 March 1983.

[2]　To remedy the evil of uncertainty of land titles, in 1885 the North Carolina General Assembly passed the Connor Act, now codified as G.S. 47-18. In that portion of the statute here involved, it provides that no conveyances of land or no contract to convey [or reconvey] land shall be valid to pass any property interest as against any purchaser for a valuable consideration from the bargainor but from the time of registration thereof. In particular, this law does not favor persons withholding from the public record deeds or contracts to convey [or reconvey] lands, particularly when third parties have given valuable consideration for same. *See Bell v. Couch*, 132 N.C. 346, 43 S.E. 911 (1903). "The purpose of the statute [now G.S. 47-18, as noted by its legislative author, Henry G. Connor, later the Justice of the N. C. Supreme Court who also authored the *Bell* opinion] was to enable purchasers to rely with safety upon the examination of the records, and act upon the assurance that, as against all persons claiming under the 'donor, bargainor, or lessor,' what did not appear did not exist." *Wood v. Tinsley*, 138 N.C. 507, 515, 51 S.E. 59, 62 (1905).

The bottom line reveals the defendants Felton to be bona fide purchasers for value of the Old Betty Stephenson farm lands and dwelling by warranty deed duly recorded from the defendants Jones. At the time the Feltons purchased the property, the uncontested facts show they paid $80,000.00, plus obligated themselves to an encumbrance of a deed of trust for $79,000.00, for a total value of $159,000.00. As of the date of that transaction, 3 January 1983, the recorded title to the property was in the name of the defendants Jones. The Joneses became the record owners by virtue of the registration of their deed obtained in the foreclosure sale of the property by the Federal Land Bank for nonpayment. There is a total failure of proof by evidence in this record that the purchase by the Joneses was done pursuant to any parol trust with the plaintiff to reconvey the property to him. Whether plaintiff can prove a parol trust in his case against the Joneses is of no consequence here.

[3]　The Feltons' purchase from the Joneses was without notice of any facts that would affect legal title. From the record before us, no *lis pendens* was pled, and none was proved. G.S. 1-116, *et*

*seq.* Even taking the plaintiff's affidavit in the light most favorable to him, and inferring that Stephenson gave oral actual notice to the Feltons of the pending action 80CVD367, nothing appears to show that the pending litigation affected record title to the property. The plaintiff's affidavit is insufficient to contradict record title under the Connor Act.

[4] As stated in *Hill v. Memorial Park*, 304 N.C. 159, 165, 282 S.E. 2d 779, 783 (1981), "[w]here a purchaser claims protection under our registration laws, he has the burden of proving by a preponderance of the evidence that he is an innocent purchaser for value, *i.e.*, that he paid valuable consideration and that he had no actual notice, or constructive notice by reason of *lis pendens*, of pending litigation affecting title to the property." In his affidavit Stephenson said he "needed to sell the property in order to conclude the lawsuit and to protect my interest." Also, he explained to the Feltons that "the title to the property was in the hands of Mr. Thomas Jones . . . and that he was holding the deed until I could sell the property and get enough money so I could get the rest of them out of the ownership of the property." We hold that this evidence shows that when the Feltons purchased the property they were on notice that the Joneses alone held legal title to the property, that the Feltons could deal with the Joneses independent of Stephenson, and that Stephenson's desire was that the property be sold and that a sale of the property would protect his interest. Nowhere in his affidavit does Stephenson allege facts which would constitute a parol trust from the Joneses to reconvey the property directly to him alone.

The equities are in favor of the Feltons, and a failure of proof of any genuine issue of fact stops the pursuit by Mr. Stephenson of his alleged parol trust, of the unrecorded deed of trust, or of his claims against the lands and dwelling house. Secret trusts and hidden encumbrances, all unregistered, and for all of which there is a failure of proof of notice, must not be allowed to defeat a bona fide purchaser for value. As was said in *Beasley v. Wilson*, 267 N.C. 95, 97, 147 S.E. 2d 577, 579 (1966), "An unrecorded contract to convey land is not valid as against a subsequent purchaser for value . . . even though he acquired title with actual notice of the contract." Of like import is *Bourne v. Lay & Co.*, 264 N.C. 33, 35, 140 S.E. 2d 769, 771 (1965), "Actual knowledge, however full and formal, of a grantee in a registered deed of a prior

unregistered deed or lease will not defeat his title as a purchaser for value in the absence of fraud or matters creating estoppel." Here, there is neither pleading nor proof that there was any fraud or estoppel in the Feltons' conduct.

We also call attention to certain other deficiencies in the pleadings. The complaint alleges a voluntary conveyance by the plaintiff to the Joneses and fails to allege that the Joneses had no intention of reconveying the property to the plaintiff in the future. The complaint shows that the Joneses became the owners twice, once by the original warranty deed from Stephenson and once through becoming the purchasers at the foreclosure sale. In the face of these allegations Stephenson's affidavit would show to third parties, at most, a wish or desire to repurchase the property and become the owner.

We hold that summary judgment was correctly entered for the defendants Felton.

We call attention to one other aspect of the judgment entered below. It provided:

> IT IS FURTHER ORDERED that [the Feltons] shall pay any balance on the purchase price of said property, as it becomes due and payable, into the office of the Clerk of Superior Court of Hertford County and the Clerk shall hold same pending resolution of the issues between the Plaintiff and Defendants.

This part of the judgment shall remain in full force and effect until the issues have been resolved between the plaintiff and the defendants, Thomas L. Jones and wife, Paula H. Jones.

Affirmed.

Chief Judge VAUGHN and Judge EAGLES concur.